EASTERN ROCK ISLAND PLOW COMPANY *v.* HINTON ET AL.

[No. 11,554.   Filed January 31, 1924.]

1. PARTNERSHIP.—*Existence.*—*Evidence.*—In an action for the price of merchandise sold to two men who were doing business in a firm name, evidence held sufficient to warrant a finding that there was no partnership between them, but that one of them financed the enterprise for a share of the profits.   p. 67.

2. TRIAL.—*Special Finding.*—*Contradictory Findings.*—Contradictory findings in a special finding nullify each other, and should be ignored, leaving the uncontradicted facts found to control the conclusions of law.   p. 67.

3. PARTNERSHIP.—*Existence.*—*Question of Fact.*—The existence of a partnership is a question of fact, to be determined by the jury or court trying a case involving the question. p. 67.

4. PARTNERSHIP.—*Existence.*—*Implied or Arising by Operation of Law.*—A contract of partnership may be implied or arise by operation of law, even though the parties do not intend to become partners or agree that they are not to be partners. p. 68.

5. PARTNERSHIP.— *Action Against.*— *Evidence.*— In an action against persons doing business in a firm name, where the court found that there was no partnership, there was no error in refusing to admit in evidence a "trade acceptance" accepted by one of the defendants, when the evidence failed to show that the other defendant ever saw the acceptance or knew anything about it. p. 69.

6. APPEAL.— *Review.*— *Exclusion of Evidence.*— *Saving Exceptions.*—In order to save any exception to the exclusion of evidence, it must be shown (by bill of exceptions) that questions were actually propounded to the witnesses and, on objections being sustained thereto, that offers to prove were properly made, and this cannot be shown by the motion for a new trial. p. 70.

From Delaware Circuit Court; *William A. Thompson,* Judge.

Action by the Eastern Rock Island Plow Company against Grant C. Hinton and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.* `

*Gavin & Gavin,* for appellant.
*Francis A. Shaw,* for appellee.

McMAHAN, J.—Complaint by appellant to recover for certain merchandise which it is alleged was sold to Grant C. Hinton and William L. Allison, as partners doing business under the name of Matthews Implement Company and to set aside as fraudulent a conveyance of certain real estate made by Grant C. Hinton, through a trustee to himself and his wife, Delcina Hinton. William L. Allison and Delcina Hinton each filed an answer of general denial. Grant C. Hinton filed an answer of

general denial.   He also filed three special paragraphs of answer, in which he alleged payment, *non est factum* as to one instrument which was made the foundation of one paragraph of complaint, and another paragraph in which he stated at great length the business relationship existing between him and Allison.   Since the facts were found specially and no question raised as to the sufficiency of any of the pleadings, it is not necessary to set them out in detail.

The facts as found by the court are, in substance, as follows:

On and prior to October 31, 1918, Allison had been engaged in selling fertilizer and agricultural implements at Matthews, Indiana.   On and prior to said day, Allison and Grant C. Hinton had been in some business ventures together and were intimate personal friends. Allison was financially involved and unable to buy goods on credit.   On or about October 31, 1918, Grant C. Hinton, who for brevity will hereafter be designated as Hinton, agreed with Allison that he, Hinton, would, by his credit and money, buy a small stock of farm implements and machinery for Allison so that he could continue to operate a farm implement store in Matthews and, on said day, Hinton and Allison ordered from appellant, through an agent, a bill of goods amounting to $782.40.

When Hinton and Allison entered into said agreement, it was agreed between them that Allison should have exclusive control of the goods to be bought by Hinton, that he alone should sell the same, collect the money for which such goods were sold and turn the money over to Hinton, who should have the custody and control of the money for the purpose of applying it, as collected, upon the purchase price of the goods so bought.   Hinton advanced of his own money sufficient sums, together with what was received from time to

time from the sale of the goods bought October 31, 1918, to pay for said goods; that Hinton, in and about the business of said Allison, which was carried on and conducted in the name of the Matthews Implement Company, pursuant to said agreement, signed his name to papers as treasurer of said company and signed the name Matthews Implement Company, by G. C. Hinton, treasurer, to certain written instruments and papers in relation to his, Hinton's, liability and responsibility in connection with the purchase of said goods and merchandise for said company and for his work and labor in and about the management of the financial interests of said Matthews Implement Company.

Allison and Hinton never had any contract of partnership between themselves or community of interest in the property or profits of the Matthews Implement Company but Hinton was to have fifty per cent. of the profits as compensation for moneys advanced and for his services rendered in the management of the finances of said concern so long as he continued to act in that capacity.

The purchase of said bill of goods by Hinton and Allison was made from one Black, traveling salesman of appellant. At the time of the sale of said goods, such salesman tried to sell Hinton a larger amount of goods than this bill, at which time, Hinton informed Black that he would buy no larger amount of goods than the amount he had already bought, and he also said that he would pay for the goods that he had bought that day and advised Black not to sell Allison any more goods on his, Hinton's, credit, that he, Hinton, would pay for no more goods. Hinton told Black he was doing this for the accommodation of Allison and that, if Allison made good with this purchase, he could then buy for himself. When said bill of goods was bought, the order was signed in the personal names of G. C. Hinton

and W. L. Allison.   Hinton never at any time after that bought anything of appellant for the said Matthews Implement Company, or for himself or any other person. All goods purchased from appellant for the Matthews Implement Company subsequent to said dates were purchased by Allison alone.   Soon after the arrangements were made for the purchase of said goods, Hinton made arrangements with the Gaston Banking Company for the opening of an account of the Matthews Implement Company and the same was carried in said bank in the name of "Matthews Implement Company, G. C. Hinton, Treasurer," and was carried in that way so that Allison could not check against such account.

After October 31, 1918, and before May 13, 1919, Hinton had made payments upon the bill of goods so ordered by him through said Black.   On May 13, 1919, one Snyder, an agent and salesman of appellant, settled with Hinton for the goods so ordered and bought by Hinton October 31, 1918, and May 13, 1919.   Hinton had no key to the store building at Matthews which Allison occupied with the goods bought by Hinton and other goods bought by Allison.   There were no partnership books kept and there were no partnership accounts.   Hinton had nothing to do with the sale of any part of the goods and stock of merchandise held by Allison in the store room at Matthews.   There were no letterheads, circulars or advertisements in which it appeared that Hinton was a partner in said business. Under the arrangements made between Hinton and Allison, Allison was to and did turn over to Hinton the moneys realized from the sale of the goods and merchandise in his store at Matthews, and out of such moneys turned over to Hinton, he paid some of the debts of Allison other than the debt incurred by the contract entered into by Hinton and Allison on October 31, 1918.

Grant C. Hinton never held himself out as a partner with Allison in the Matthews Implement Company to appellant or to anyone else, and neither appellant nor any one else ever trusted or extended credit to the Matthews Implement Company on account of or because they believed Hinton to be a partner in said concern, or trusted the implement company on account of or because they believed Hinton to be a partner in said concern, or trusted the implement company upon the financial standing of Hinton. Hinton and Allison never were, in fact, as between themselves partners, and Hinton never in any way assumed any liability for and on account of the purchase of any goods from appellant except said first bill of October 31, 1918, and he never promised or agreed to pay any part of any bill for goods furnished by appellant to the Matthews Implement Company, except said bill of October 31, 1918. Appellant, at the time of said purchase and at all times thereafter, was advised and knew that Hinton was not a partner with Allison in the Matthews Implement Company and was fully advised that he was in no way liable for any bills made for goods purchased from it after said order of October 31, 1918.

Allison agreed to pay Hinton one-half of the profits derived from the business of the implement company, if Hinton would advance moneys to make such purchase, or to extend his credit for such purpose, and for his work and labor in the management of the financial interest of the implement company, but Allison never paid Hinton anything as profits from the business of the implement company, nor did Hinton receive anything for the use of his money or credit or for his work and labor in the management of the financial interests of the company from Allison or the implement company or from any other source. Hinton, at the time of the commence-

ment of this action, did not owe and was not indebted to the appellant at the time this case was tried. Allison is indebted to appellant in the sum of $3,897.84.

On May 1, 1919, Hinton was the owner of the real estate described in the complaint and, on that date, made the conveyances mentioned in the complaint and afterwards on May 13, 1919, paid appellant $949.10; that being in full for the order of October 31, 1918, and in full of all debts and demands of appellant against him and that said conveyances were not made for the purpose of hindering and delaying appellant in the collection of any bill or with the intent or purpose of cheating and defrauding appellant out of any sum of money owing by him to appellant; that the said conveyances in no way hindered, delayed, deferred or interrupted the collection of said indebtedness of Hinton to appellant. Upon these facts, the court stated its conclusions of law as follows:

1. That Hinton was not a partner with Allison, at the time of the purchase of any of the goods and merchandise from appellant for which recovery is sought in this action. 2 and 3. That Hinton was not owing appellant any sum of money whatsoever, and was entitled to recover his costs. 4. That appellant is entitled to a judgment for $3,897.84 against Allison.

From a judgment in accordance with the conclusions, appellant appeals and contends the court erred in each conclusion of law and in overruling of its motion for a new trial.

Appellant contends that the facts as found by the court show as a matter of law that Hinton and Allison were in fact partners notwithstanding the court found there was never any agreement of partnership and that, as a matter of fact, they never were partners and never had any community interest in the property or profits of the implement company.

In addition to these specific findings that they were not partners, the court found many facts in support of the ultimate finding on that question.    For instance, it is found that Hinton agreed with Allison that the former would, by his credit and money, buy a small stock of goods for the latter so that he could continue to operate an implement store; that they ordered goods from appellant of the value of $782.40, at which time Hinton refused to give an order for more goods and told appellant's salesman not to sell any more goods to Allison on his (Hinton's) credit, and also informed such salesman that he would not be responsible for any goods sold to Allison without his consent; that Allison had complete control over the stock of goods, he alone selling them and giving the money when collected to Hinton, who deposited it in a bank in such a way that Allison could not check it out or use it for any purpose. Hinton never had a key to the store building and never had anything to do with the sale of any of the goods in the store room.    There were no partnership books kept nor were there any partnership accounts.    There were no letterheads, circulars or advertisements in which it appeared that Hinton was interested in the business. It was also found that Hinton never held himself out to anyone as a partner of Allison, and that appellant, when it sold the goods, was advised and knew that Hinton was not a partner and was not liable for any goods purchased after October 31, 1918, that being the day when the first bill of goods was purchased and which the court finds was paid in full before the commencement of this suit.

The question as to whether Hinton and Allison were partners was one of fact, and the court found against appellant on this issue.    Not only did the court 1-3. make a specific finding against appellant on the question, but it found many facts from which it

could be inferred, as a matter of fact, that there was no partnership. It is true, as contended for by appellant, that many facts were found indicating there was a partnership, but it is settled that where contradictory facts are found, such facts must be ignored. In such cases the uncontradicted facts control. And the uncontradicted facts as found are sufficient to show as a fact that there was no partnership, or at least to sustain the court in its finding as an ultimate fact that there was no partnership.

Whether the first conclusion of law which was to the effect that there was no partnership, was a proper conclusion is not necessary for us to determine. We have, however, heretofore held that the question as to whether there was a partnership was one of fact. The first conclusion might have been omitted. If the facts found are sufficient to and do show the existence of the partnership when the merchandise in question was sold, it would follow as a matter of course that conclusions 2 and 3 were erroneous. If, on the contrary, the facts show there was no partnership and that appellee Hinton paid appellant in full for all goods ordered for which he was liable, conclusions Nos. 2 and 3 would not be erroneous. Since the court found the facts in favor of Hinton on the issue of partnership and that he had paid for all the goods for which he was liable, there was no error in the second and third conclusions.

It is true that a contract of partnership may be implied or arise by operation of law, even though the parties do not intend to become partners or agree they are not to be partners. But where the evidence is conflicting and different inferences of fact can be drawn therefrom, the ultimate question as to the existence of a partnership is always one of fact. Where the facts found are not contradictory and are such that the only reasonable inference that can be

drawn therefrom is that there is a partnership, it might be proper for the court so to state a conclusion of law to that effect although that question is not now before us and we express no opinion on that question. The court did not, on the facts found, err in either of its conclusions of law.

Appellant next contends that the finding of facts is not sustained by sufficient evidence. Its claim is that many facts were established by the uncontradicted evidence, and that the court failed to find the existence of such facts. The special finding is unnecessarily lengthy and contains many evidentiary facts which could well have been omitted. Many of the facts which appellant contends were proved but omitted were evidentiary matter and would have added nothing to the effect of the facts found. If all of the facts which appellant contends were proved had been stated in the finding, they would not, when considered in connection with the other facts found, have rendered the conclusions of law erroneous.

One of appellant's contentions is that the evidence without conflict shows that appellee Hinton had not paid all that was due and owing on account of the merchandise for which he admits he agreed to pay. The evidence upon this question was contradictory and is sufficient to sustain the finding of the court in that regard.

Appellant contends that the court erred in sustaining appellee's objection to the admission of a certain trade acceptance in favor of the Hoover Allison

5.  Co. There was no evidence showing that appellee Grant C. Hinton ever saw this acceptance or knew anything about it. It was accepted by appellee Allison. There was no error in refusing to admit it.

Appellant in response to a question asked the witness Alley as to what Hinton said about being behind Alli-

son in the business, and offered to prove that Hinton stated to the witness that he and Allison were partners. An objection to this question was sustained, but later the same witness said that Hinton had not said anything to him about the existence of a partnership.

Specifications Nos. 11, 12, 16, 17, 24, 25, 26, 27, 28, 32, 33, 34, 35 and 36 in the motion for a new trial relate to the exclusion of certain testimony. There 6. is no showing that the questions referred to were in fact asked the witnesses, or that any offers to prove were made. The only place where we find any reference to these matters is in the motion for a new trial, and it has been many times held that is not sufficient to present any question. There was no error in overruling the motion for a new trial.

After appellee Hinton ceased to have anything to do with the business, Allison continued in possession of the stock of goods for some time, when he moved from Matthews to Muncie, and left the stock of goods in the storeroom without anyone to look after them, and without any insurance. He testified he abandoned the goods upon the theory that they belonged to appellant. Upon the filing of the complaint herein, the court appointed a receiver, who took possession of the stock of goods and who, at the time of the trial, was in possession of all of such stock except what had been released by order of court. In so far as the record discloses, this cause is still pending, in so far as the receivership is concerned, and, without attempting to direct the trial court as to what proceedings should be had in so far as the receivership is concerned, we deem it proper to suggest that the court should take such steps in that matter as may be proper.

Judgment affirmed.